ODOM, J.
 

 This litigation involves the ownership of a narrow strip of ground in the city of New Orleans, fronting IT' 4"' on Kerlerec street, and running back 95' IT'. Plaintiff alleges that he owns the property and that defendant is in physical possession thereof without right or title. He brings this petitory action and prays to be decreed the owner of the property. There was judgment for plaintiff in the lower court and defendant appealed to the Court of Appeal, which reversed the judgment. 131 So. 599, 600. Upon application of plaintiff this court ordered the case up for review.
 

 Plaintiff and defendant are adjacent proprietors, each owning a lot of ground in Sq. No. 154, bounded by Eoyal, Frenchmen, Chartres, and Kerlerec streets in the city of New Orleans, fronting on Kerlerec street. Plaintiff’s deed calls for a lot commencing at a distance of 34' 10'' from the corner of Eoyal and Kerlerec streets, measuring 31' 4" 3"' fronting on Kerlerec, with a depth of 95' IT ', as per map made by Edgar Pilie on May 29, 1901.
 

 Defendant’s lot, which, as stated, is adjacent to that of plaintiff, measures, according to the deed, 30' 10'' 7'" on Kerlerec street, with a depth of 95' IT '.
 

 A resurvey and measurement of these lots made by city surveyors in August, 1927, show that defendant has set his fence IT'4'" over the line which plaintiff claims is the true boundary between the lots. It is defendant’s contention that his fence is on the true boundary line and he claims to own the ground up to his fence. It is the narrow strip of ground between defendant’s fence and the line which plaintiff contends is the correct boundary between the property which is in controversy.
 

 ' It is plaintiff’s contention that this strip of ground is part of the lot which he purchased from Frank Viola et al. on June 28,1927. He traces his record title to the lot back through an unbroken chain to the year 1882, and alleges that his predecessors in title up to the year 1919 were in continuous and uninterrupted possession thereof as owners for more than forty years, and pleads in aid of his record title the prescription of five, ten, and thirty years'.
 

 As against plaintiff’s contentions, defendant alleges that the strip of ground is part of his lot, and that he and his authors in title are now and have been in physical possession of it for more than forty years.
 

 In petitory actions the plaintiff, in order to maintain his suit, must prove that his title is superior to that of his adversary. Glover v. Haley et al., 118 La. 649, 43 So. 265; City of New Orleans et al. v. Union Lumber Co., Ltd., 145 La. 476, 82 So. 588; Bruton v. Braselton et al., 157 La. 64, 101 So. 873; Doiron et al. v. Lock, Moore & Co., 165 La. 57, 115 So. 366.
 

 The plaintiff failed to discharge the burden which rested upon him and his suit must fall.
 

 As to the respective record titles of plaintiff and defendant, there is a conflict.- If plaintiff were given all the frontage his deed calls for, the defendant would have less than-he is entitled to under his deed. One or the other of the lots is short in front measurement.
 

 The Court of Appeal correctly stated the situation as follows:
 

 
 *736
 
 “It Is apparent that the common ancestor sold more land than he owned, because the plaintiff claims he has not all of the property called for by his title and the defendant claims that he is only in possession of the property called for by his definitive title. If the plaintiff has a better title to any part of the property owned by the defendant, it can only be by purchase from a common ancestor. However, plaintiff has failed to trace the title to a common ancestor, has failed to establish who the common ancestor was or when he parted with the title under which plaintiff claims. But even if the plaintiff had traced the title to a common ancestor and had shown that he had acquired first, there would yet be a doubt as to his right to prevail over the defendant as the plaintiff’s chain of title calls for an uncertain front measurement whereas the defendant’s chain of title is for a fixed front measurement. The plaintiff’s chain of title prior to 1901 shows a front measurement of
 
 ‘31
 
 feet, 1 inch, more or less.’ The defendant’s title has always been for 30 feet, 10 inches, and 7 lines front on Kerlerec street, as far back as 1866. If the plaintiff’s title is the only one of the two coming from a common ancestor containing the words ‘more or less,’ it would be obvious that the common ancestor intended to impose upon the plaintiff’s lot any discrepancy in the measurement.
 

 “We conclude that the plaintiff has failed to prove or establish a superior record title to the property in question.”
 

 We approve the court’s finding that the plaintiff has not the better record title.
 

 It is contended by plaintiff, however, that if it be true that he has not the better record title, he has acquired the property by prescription, acquirendi causa, which he especially pleaded.
 

 In plaintiff’s application to this court for a writ of review, one of the errors specified was that the Court of Appeal had held:
 

 “That plaintiff in a petitory action can not plead his prescriptive title based on ten (10) years and thirty (30) years actual physical possession under a title translative of property, where defendant is in possession at the time of the spit for more than one year but less than ten years.”
 

 We do not think the Court of Appeal intended to hold or did in fact hold that a plaintiff in a petitory action cannot make proof of his title acquired by prescription. Counsel, we think, has misconstrued the opinion. What the court did hold was this: “We conclude that a plaintiff in a petitory action cannot defeat defendant’s superior title by pleas of prescription where defendant is in possession.”
 

 The mere fact that one who claims the ownership of real property finds another in physical possession thereof does not cut • him off, in a petitory action, from proving his ownership by whatever title he may have acquired. Prescription is one of the methods of acquiring title to real property in this state. Civ. Code, arts. 3475, 3478, 3500.
 

 A title by prescription is as good as any other under our law. Those who claim to own real property have a right, by the petitory action, to vindicate their titles as against those who claim an adverse interest, and to do so, may plead and urge whatever title they have, whether acquired by prescription or otherwise. If this were not true, the owner of real estate under a prescriptive title might lose it if another happened to gain possession. A title acquired by prescription would be worthless as against even a trespasser who happened to gain possession, if the owner were deprived of the right to plead prescription as a. basis of title in a petitory action. The owner would be deprived of the right to bring the petitory action which “must be brought against the person, who is in the actual possession of the immovable, even if the
 
 *738
 
 person having the possession be only the farmer or lessee.” Code.Brae. art. 43.
 

 The petitory action is that brought by an alleged owner out of possession against one having possession, to determine the ownership. Ramos Lumber & Mfg. Co., Ltd., v. Labarre, 116 La. 559, 40 So. 898.
 

 In the case of Bernstine v. Leeper et al., 118 La. 1098, 43 So. 889, 890, the court Said:
 

 “The contention of defendant’s learned counsel that a petitory action cannot be based on a title acquired by prescription can hardly be serious. Of course, a party out of possession cannot acquire by prescription; but, if he loses his possession only after having acquired a title by prescription, it would be strange if he could not vindicate that title as against a mere possessor. A title by prescription is a title, as much so as any other, and a man does not lose his title when he loses possession.”
 

 The confusion as1 to what the Court of Appeal held seems to be due to the fact that it cited the cases of Waddill v. Walton et al., 42 La. Ann. 763, 7 So. 737, and Lambert v. Craig, 45 La. Ann. 1109, 13 So. 701, in support of its conclusions.
 

 The cases cited were petitory actions brought by plaintiffs who had never been in possession, but claimed the property in controversy under tax titles and' were seeking to oust the original owners who had never been out of possession. The defendants, it seems, attacked plaintiffs’ titles on the ground that the alleged tax forfeiture and deeds under which they claimed were null and void on account of certain defects which they pointed out, and plaintiffs contended that all such defects, if any, had been cured by prescription. The court held that “where the holder of a tax-title appears as plaintiff, in a petitory action against the former owners in possession, he is bound to establish his title, and cannot overcome objections to it on the ground of prescription.”
 

 The plaintiffs in those cases did not plead prescription acquirendi causa, but contended that the alleged defects in their paper or record titles were cured by prescription, and the court held that when the holders of such titles, having never obtained possession, “assume the character of petitory plaintiffs, and seek to oust the former owners, whose possession has never been divested, they must establish their title unaided by such prescriptions. Defendants have brought no action to invalidate plaintiff’s tax-title. They are simply defending their own possession and title against an attack made by him. He must submit -to the burden imposed on every petitory plaintiff, of showing a title not merely prima facie, but absolutely, good.”
 

 Manifestly the court did not hold, in thé. cited cases, against the proposition that a plaintiff in a petitory action cannot establish his title by prescription acquirendi causa where he finds another in possession of his property.
 

 In the ease of Leonard v. Garrett, 128 La. '535, 54 So. 984, 985, the court, referring to' the cases of Waddill v. Walton and Lambert v. Craig, supra, said:
 

 “Those were eases where the party invoking prescription had never had possession. When it comes to relying upon prescription, there is a vast difference between having never had possession, and having had it for 10 years with title, or 30 years without title. According to the doctrine advocated by plaintiff, if a trespasser were to gain possession of some old homestead and hold it for one year, and thereby acquire a right of possession, the previous possessors of this homestead could not maintain the petitory action to recover it,
 
 *740
 
 although, before losing possession of it to this trespasser, they and their forebears had occupied it as their home for over 1,000 years, and had had title to it by the prescription of 30 years for more than 970 years.”
 

 Defendant was not only in possession of the strip of ground in controversy when this suit was filed, but he had the better record title thereto. The plaintiff contends that even if defendant had possession under title, his possession having been for less than ten years, was not sufficient to defeat his (plaintiff’s) title acquired by prescription of thirty years.
 

 It is unquestionably true that if plaintiff owned the property, by whatever title, his title was not divested by virtue of defendant’s possession under title for less than ten years. But if defendant had possession under a deed translative of property for more than ten years, his title is now valid.
 

 But we find as a fact that not only did defendant have a record title to the strip of ground, but he and his authors in title had possession of it for more than forty years. Plaintiff failed to prove that he had ever physically possessed it. Mr. Eus'tis, a civil engineer, surveyed and measured these lots at the instance of plaintiff in 1927. He found a wall fence built by defendant over on the lot claimed by plaintiff; that plaintiff’s lot “didn’t have the full title measurement; it was encroached on by the lot nearest Chartres” (defendant’s lot).
 

 Referring to a survey made by Wakefield, another engineer, Mr. Eustis, Said;
 

 “And when I made the survey for Mr. Capra (plaintiff) and completed it, the fence was found to encroach, by me, just the same as Mr. Wakefield found the fence to encroach. Mr. Wakefield’s survey was made in 1921 and mine is dated 1927."
 

 ' According to the Eustis plat filed in evidence, defendant set his fence 11' '4'" over the line which plaintiff claims is the true boundary line. The testimony shows that for more than fifty years there had been buildings on each of these lots, which buildings had been separated by a common wall, a portion of the distance back, and from the line of the building to the end of the lot, by a fence. The common wall was’finally demolished and a fence erected on the line where it stood. That fence now separates the two lots. Defendant and his son both testified that they built the fence on the line where the common wall stood.and their testimony is not disputed. Plaintiff never possessed any ground beyond the common wall. He has therefore never possessed the strip of ground in controversy.
 

 As proof that he had possession of this strip of ground prior to 1919, plaintiff filed in evidence two plats made several years ago, with shaded portions to represent the location of the buildings on his lot. These show the buildings to be up to the line which 'he contends is the true line. But there is no testimony to show that they were in fact built up to the line.
 

 The judgment of the Court of Appeal is affirmed.