**Eddie Ben PORTER**

v.

**Isaac M. PORTER and Florida Lucretia Porter.**

**Civ. A. No. 4585.**

United States District Court
W. D. Louisiana, Shreveport Division.

Jan. 2, 1957.

Frank S. Kennedy, Jackson, Smith, Mayer & Kennedy, Shreveport, La., for plaintiff.

C. P. Brocato, Shreveport, La., for defendants.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

Tried without jury, this diversity action seeks recovery of title to certain mineral producing lands located in this District, and prays for an accounting for all proceeds from past production.

The only law involved in the case is the fundamental Louisiana rule, applicable to petitory actions such as this, which requires plaintiff to prove his claim by a preponderance of the evidence—upon the strength of his own title, and not because of any weakness in defendants' title, Dugas v. Powell, 197 La. 409, 1 So.2d 677; Waterman v. Tide Water Associated Oil Co., 213 La. 588, 35 So.2d 225; Simmons v. Jones, La.

App., 68 So.2d 633; Curry v. Henry, La. App., 29 So.2d 808; Cupples v. Harris, 202 La. 336, 11 So.2d 609; Succession of White, La.App., 85 So.2d 528. As will appear, plaintiff has failed to sustain this burden of proof.

On November 14, 1885, Charlotte Love Mims acquired full title to the property, as her separate estate, in a partition proceeding among the heirs of Jordan and Kate Mims. She previously had married William Clarence Porter on October 8, 1885, and to this union was born one child, Clarence Elihu Porter. His exact birth date is unknown, but obviously he was born some time between the date of his parents' marriage in October 1885, and the year 1892, when they were divorced, his mother also having died later in that year. Probably, as will be shown, he was born in Louisiana in March of 1890. Upon his mother's death, he inherited full title to the property.

It is through Clarence Elihu Porter that both plaintiff, Eddie Ben Porter, and defendants, Isaac M. Porter and Florida Lucretia Porter, claim title. Plaintiff contends that he is Clarence Elihu Porter's son and that upon his death, allegedly on January 23, 1929, he inherited title to the property from him. Defendants claim that Clarence Elihu Porter was not plaintiff's father, who was a different and considerably older person named Ben Porter. Defendants also contend that Clarence Elihu Porter was their half-brother, who left home in May of 1906, never having been heard from since; and that, having been placed in provisional possession of the property on August 12, 1935, as his only heirs, by *ex parte* judgment of the State Court for the Parish in which the property is located, and having been recognized as its absolute owners by *ex parte* judgment rendered by the same Court on June 28, 1949, sending them into possession, plaintiff's claims must be rejected.

We find the facts to be as follows: After the death of Charlotte Love Mims in 1892, William Clarence Porter married Mattie Jackson in Caddo Parish, Louisi-

ana, on February 27, 1893, and they later, about 1895, moved to Texas, taking Clarence Elihu Porter with them. To this union two children were born, namely Isaac M. Porter, who was born in July of 1897, and Florida Lucretia Porter, born in January of 1899, in Lamar County, Texas. In late 1906, the family moved back to Louisiana and William Clarence Porter died on November 26, 1913, in Shreveport.

The only evidence offered by plaintiff in an attempt to prove that his father was Clarence Elihu Porter is his own testimony, and that of two brothers-in-law and a 93-year-old witness named King Williams, all of whose testimony is not convincing. Opposed to this is fairly conclusive evidence, testimonial and documentary, showing that defendants' version of the facts probably is correct.

Plaintiff's father, Ben Porter, grew up in the Newsome community, in Camp County, Texas, living in the home of his uncle and aunt, Doc and Ellen Porter, to whose place he came as a small boy. He was married to plaintiff's mother, Lizzie Steward, at Pittsburg, Texas, on March 23, 1905. At that time he was a full-grown man. Plaintiff was the sole issue of that marriage, having been born on June 29, 1906. Ben Porter died at his home in Denison, Grayson County, Texas, on January 23, 1929. He gave his name as Ben Porter—not as Clarence Elihu Porter—in his marriage license, and he was shown as such on his death certificate, as well as in several applications for employment filed by him with the Missouri, Kansas & Texas Railroad. In the first of these applications, made at Denison, Texas, on November 4, 1912, he stated that his father was named Jake Porter—not William Clarence Porter— and that his own birth date was August 12, 1874. In the second application, made at Denison on November 29, 1912, less than four weeks later, he stated that his father and mother were dead (although we know that William Clarence Porter, the father of Clarence Elihu Porter, did not die until November 26, 1913). He

also gave his birth date, in that document, as August 12, 1878. In the third application, made at Denison on February 17, 1919, he gave his birth date as August 12, 1869, and stated that he had had sixteen years' experience as a train porter, which would have meant he was working in that capacity in 1903. At that time, as we will next show, Clarence Elihu Porter would have been only thirteen years of age.

In the record is a certificate from the Director of the Bureau of Census showing that in the census of 1900, taken as of June 1st that year, William Clarence Porter and Mattie Porter were living in Precinct 3 of Lamar County, Texas, with three children, namely, Clarence, who was then 10 years old, having been born in March 1890, in Louisiana; Isaac M., who was born in July 1897, in Texas; and Florida L., who was born in January 1899, in Texas. For Clarence Elihu Porter to have been the husband of Lizzie Steward, he would have been barely fifteen years old at the time of the marriage, and just over sixteen when plaintiff was born, a most unlikely occurrence. There is strong testimony from several disinterested witnesses, whom we believe, to the effect that Clarence Elihu Porter was still at home with his father, step-mother, half-brother and sister until the late spring of 1906, more than a year after Ben and Lizzie Porter were married.

These incontrovertible facts plainly show, we think, that Ben Porter and Clarence Elihu Porter were two different persons, of substantially dissimilar ages, who lived at different places, with different families, and that plaintiff is not the son of the latter. We are fortified in these conclusions by the apparent lack of good faith displayed by plaintiff in waiting so long—from 1938 or 1939, when he allegedly first learned of his purported heirship—to file this suit, on May 18, 1954, some fifteen or sixteen years later. Having thus failed to prove his claim to heirship by a preponderance of the evidence, and, indeed, the weight of the credible evidence being against his contentions, plaintiff's suit must fail and his demands must be rejected at his cost.

Proper decree should be presented for signature.